UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

LAZARO LAURENCIO,

        Plaintiff,

vs.                                    Case No.  2:03-cv-294-FtM-29DNF

SECRETARY, DEPT. OF CORRECTIONS,
WARREN W. CORNELL, Warden, LT.
SMITH, C.O. EDWIN CARDENAS, SGT.
JOHN CHURILLA, ROBERT A. BRIGGS,
M.D., NURSE MCCUSTER, R.N. and
WEXFORD HEALTH SOURCES, INC.,

        Defendants.
_____

## OPINION AND ORDER

This matter comes before the Court upon review of: (1) Defendant Churilla's Motion for Summary Judgment ("Churilla Motion," Doc. #65); and (2) Defendants Wexford Health Sources, Inc. and Dr. Briggs' Motion for Summary Judgment ("Wexford Motion," Doc. #66). On August 31, 2006, Plaintiff filed a single Response to Churilla's and Wexford's Motions (Doc. #73). This matter is ripe for review.

### I.

Plaintiff, an inmate incarcerated within the Florida penal system proceeding *pro se*, filed a First Amended Complaint (hereinafter "Amended Complaint") pursuant to 42 U.S.C. § 1983. ("Amended Complaint," Doc. #6.) The Amended Complaint alleges Eighth Amendment violated in connection with an attack on Plaintiff by another inmate while Plaintiff was incarcerated at Charlotte

Correctional Institution ("CCI").  The Amended Complaint identified two separate categories of Defendants: the "Corrections Defendants," which included the Secretary of the Department of Corrections, Warden Warren Cornell, Lt. Smith, C.O. Cardenas, and Sgt. Churilla; and the "Medical Defendants," which included Dr. Robert Briggs, Nurse McCuster, and Wexford Health Sources, Inc.  On March 27, 2006, the Court entered its Opinion and Order granting the Medical Defendants Motion to Dismiss to the extent that the Court dismissed Plaintiff's Amended Complaint against Nurse McCuster in both her individual and official capacities and against Dr. Briggs in his official capacity only.  See March 27, 2006 Order of Court (Doc. #44), p. 19, ¶1.  Additionally, the Court granted the Corrections Defendants' Motion to Dismiss to the extent that the Court dismissed the Secretary of Department Of Corrections, Warren W. Cornell, Edwin Cardenas, and John Churilla in their official capacities, and dismissed Warren W. Cornell and Edwin Cardenas in their individual capacities.  See Id. ¶2. Further, the Court dismissed Defendant Smith for failure to effectuate service fo process.  See Id. ¶3.  Consequently, Plaintiff's Amended Complaint remains pending as to Defendant Sgt. Churilla and Dr. Briggs in their individual capacities and Wexford Health Sources, Inc. (Id.)

Defendant Sgt. Churilla seeks entry of summary judgment for the following reasons: (1) Plaintiff failed to exhaust his administrative remedies; (2) qualified immunity; (3) failure to

state a claim for deliberate indifference.[1]   Defendant Churilla
attaches, *inter alia,* the following exhibits to his Motion: (1)
Affidavit of Defendant Churilla (Doc. # 65-2), including a diagram
of G Dormitory where Plaintiff was housed and the Incident Report
competed by Churilla on the same day as the incident; (2) Office of
the Inspector General Investigation Report, Part I (Doc. #65-3)
(hereinafter "DOC Report I"); (3) Office of the Inspector General
Investigation Report, Part II (Doc. #65-4) (hereinafter "DOC Report
II"); and (4) the DOC's Statistics on Inmate Population Batteries
at CCI during 2001 (Doc. #65-7).

Defendants Wexford and Briggs seeks summary judgment for the
following reasons: (1) Plaintiff has failed to exhaust his
administrative remedies; (2) Plaintiff failed to state a cause of
action for deliberate indifference to his serious medical needs;
(3) Dr. Briggs is entitled to qualified immunity; (4) the Eleventh
Amendment bars this action against Wexford; and (5) Plaintiff
cannot show that a constitutional violation arose from a custom,
policy, or practice of Wexford.  For the reasons stated herein, the
Court will grant the Defendants' respective Motions for Summary
Judgment.

---

[1]Defendants Churilla, Wexford, and Briggs rely upon the
12(b)(6) standard in their respective motions.  The Court
previously denied Defendants' Motions to Dismiss under Fed. R. Civ.
P. 12 (b)(6).  Despite referencing the wrong standard, the Court
considers Defendants' Motions under the more stringent summary
judgment standard.

## II.

Summary judgment is appropriate only when the Court is satisfied that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  An issue is "genuine" if there is sufficient evidence such that a reasonable jury could return a verdict for either party.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A fact is "material" if it may affect the outcome of the suit under governing law.  Id.  The moving party bears the burden of identifying those portions of the pleadings, depositions, answers to interrogatories, admissions, and/or affidavits which it believes demonstrate the absence of a genuine issue of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); Hickson Corp. v. Northern Crossarm Co., Inc., 357 F.3d 1256, 1259-60 (11th Cir. 2004).

To avoid the entry of summary judgment, a party faced with a properly supported summary judgment motion must come forward with extrinsic evidence, i.e., affidavits, depositions, answers to interrogatories, and/or admissions, which are sufficient to establish the existence of the essential elements to that party's case, and the elements on which that party will bear the burden of proof at trial.  Celotex Corp., 477 U.S. at 322; Hilburn v. Murata Elecs. N. Am., Inc., 181 F.3d 1220, 1225 (11th Cir. 1999).  In ruling on a motion for summary judgment, if there is a conflict in the evidence, the non-moving party's evidence is to be believed and

all reasonable inferences must be drawn in favor of the non-moving party.  <u>Shotz v. City of Plantation, Fla.</u>, 344 F.3d 1161, 1164 (11th Cir. 2003).  In the summary judgment context, the Court must construe *pro se* pleadings more liberally than those of a party represented by an attorney.  <u>Loren v. Sasser</u>, 309 F.3d 1296, 1301 (11th Cir. 2002).

The Court adopts the facts set forth in its March 26, 2006 Opinion and Order as if the same were set forth herein. (Doc. #44.) In summary, the Amended Complaint alleges that on July 26, 2001, Defendant Churilla was deliberately indifferent to Plaintiff's safety when Plaintiff was physically assaulted by inmate Gonzalez with the brush part of a push broom while Plaintiff was in Plaintiff's prison cell.  Plaintiff claims that Defendant Churilla unlocked his cell, allowed inmate Gonzalez into Plaintiff's cell, and watched Gonzalez assault Plaintiff without intervening to stop it.  Plaintiff sustained injuries from the assault, was hospitalized, had surgery on his elbow and thumb, and returned to the jail two days later.  The Amended Complaint also claims that Defendant Briggs was deliberately indifferent to Plaintiff's serious medical needs arising from the attack when Dr. Briggs discharged Plaintiff from the infirmary to the Confined Management Unit, discontinued previously prescribed medicine, and denied post-operative care for his elbow.  Plaintiff alleges that he filed all of the grievance forms necessary to fulfill the requirements of the Prison Litigation Reform Act ("PLRA").

-5-

**III.**

Defendants Churilla, Wexford, and Briggs claim that Plaintiff failed to fully and properly exhaust his administrative grievances with respect to their particular claims and have attached copies of grievance forms submitted by Plaintiff and a copy of the Department of Correction ("DOC") grivance policy in effect at the time of the incident.  See Churilla Motion (Doc. #65), Exhibits #3 and #4. Consequently, the Court must first determine whether certain claims raised in the Amended Complaint are barred by the PRLA before the Court addresses the merits of Plaintiff's suit.  Boxer v. Harris, 437 F.3d 1107 (11th Cir. 2006).  On April 26, 1996, the President signed into law the Prison Litigation Reform Act which amended The Civil Rights of Institutionalized Persons Act, 42 U.S.C. § 1997e to read as follows:

> (a) Applicability of administrative remedies. No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility ***until such administrative remedies as are available are exhausted***.

42 U.S.C. § 1997e(a)(emphasis added).

The PLRA's exhaustion requirement has three main purposes: (1) to "eliminate unwarranted federal-court interference with the administration of prisons," Woodford v. NGO, 126 S. Ct. 2378, 2382 (2006)(citing Booth v. Churner, 532 U.S. 731, 739 (2001)); (2) "'to

afford corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case'," Id.; and (3) to "'reduce the quantity and improve the quality of prisoner suits.'" Id.

"Exhaustion is no longer left to the discretion of the district court, but is mandatory." Woodford, 126 S. Ct. at 2382; Booth v. Churner, 532 U.S. 731, 739 (2001)). See also Alexander v. Hawk, 159 F.3d 1321, 1325 (11th Cir. 1998). Thus, exhaustion is a pre-condition to suit, id.; the Court is required to enforce this requirement sua sponte. See Salas v. Tillman, 162 Fed. Appx. 918 (11th Cir. 2006) (holding that the district court's sua sponte dismissal of Plaintiff's § 1983 claims for Plaintiff's failure to exhaust was not an abuse of discretion); see also Brown v. Toombs, 139 F.3d 1102 (6th Cir.), cert. denied, 525 U.S. 833 (1998).

"[T]he PLRA exhaustion requirement requires **full** and **proper** exhaustion." Woodford, 126 S. Ct. at 2387 (emphasis added). In Johnson v. Meadows, 418 F.3d 1152 (11th Cir. 2005), the Eleventh Circuit, noting the "policies favoring exhaustion," held that the PLRA contains a procedural default component where an inmate fails to avail himself in a timely fashion of the institution's administrative process. Id. at 1156. Thus, where an inmate's grievance is denied because he fails to timely fully pursue his administrative remedies, that inmate is barred from bringing a

-7-

federal action on his claim since he cannot demonstrate full exhaustion of his remedies.

Additionally, the PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they involve excessive force or some other wrong doing. Woodford, 126 S. Ct. at 2382; Porter v. Nussle, 534 U.S. 516 (2002); Booth, 532 U.S. at 741 (finding that Congress has mandated exhaustion of administrative remedies, regardless of whether the relief sought-- i.e. monetary damages--is available through the administrative procedures).  In determining whether a plaintiff has exhausted his administrative remedies, a court does "not review the effectiveness of those remedies, but rather whether remedies were available and exhausted." Miller v. Tanner, 196 F.3d 1190, 1193 (11th Cir. 1999) (citing Alexander, 159 F.3d 1326)); Brown v. Sikes, 212 F.3d 1205, 1208 (11th Cir. 2000).

The Florida Department of Corrections ("DOC") is statutorily mandated to implement "rules relating to . . . grievance procedures which shall conform to 42 U.S.C. § 1997e. FLA. STAT. § 944.331. Accordingly, DOC has established an inmate grievance procedure for all inmates in their custody. FLA. ADMIN. CODE 33-103.001-33-103.019.  Specifically, the Department provides inmates with a three-step grievance procedure.  First, an inmate must normally

-8-

file either an informal grievance or formal grievance depending on the nature of his complaint. Id. at 33-103.005-.006.   Informal grievances are to be filed "within a reasonable time" of the date of the incident.   Id. at 33-103.011(1)(a).   Reasonableness is determined on a case-by-case basis considering the certain factors such as the availability of witnesses and evidence. Id. Inmates must file a formal grievance within fifteen days from which the informal grievance was responded to; or, within fifteen days of the date of the incident, if the grievance is used to initiate the grievance process. Id. Grievances of a medical nature are subject to these same time limitations. Id. at 33-103.008 (1)(c).  If the inmate's issue is not resolved at the institutional level, the inmate must file an appeal to the Office of the Secretary of the Department.   Id. at  33-103.007, 33-103.011.

In limited circumstances, an inmate may bypass the filing of an informal and formal grievances and file a direct grievance with the Secretary.   Id. at 33-103.007(6).  These grievances, however, must be in the nature of an emergency grievance, a grievance of reprisal, or a grievance of a sensitive nature and must be clearly stated as such on the grievance form. Id. at  33-103.007(6)(a)(1). Further, the inmate is required to state the reasons for not initially bringing the complaint to the attention of the institution or facility. Id. at 33-103.007(6)(a)(2).

The Secretary has established the Bureau of Inmate Grievance Appeals to receive, review, evaluate and respond to all grievances filed with the Secretary.  Id. at 33-103.007(4).  If upon review it is determined that the grievance is not an emergency, an act of reprisal, or of a sensitive nature, the grievance is returned to the inmate with the reasons for the return specified and the inmate is advised to re-submit his grievance at the institutional level. Id. at 33-103.007(6)(e).

## A.  Defendants Wexford Health and Briggs

With regard to Defendants Briggs and Wexford, the Court finds that the record demonstrates that Plaintiff did not exhaust his available administrative remedies.  See Churilla's Motion, Doc. #65, and attached grievances at Exhibit #3.

According to the Amended Complaint, Dr. Briggs denied Plaintiff his medications; housed Plaintiff in the close management unit, rather than in the prison infirmary in violation of departmental policy concerning seizure patients; and, did not return Plaintiff to the hospital for post-surgery care for his elbow.  With regard to Wexford, the Amended Complaint avers that "[Wexford], particularly their chief health officer at [CCI] knew of the widespread and longstanding problems with inmate care at CCI but did nothing to correct the situation."  Amended Complaint, p. 13.

-10-

Plaintiff first filed a grievance concerning medical claims on October 26, 2001, approximately three months after the incident. The claims raised in this grievance, however, are not related to the medical claims in Plaintiff's Amended Complaint.  Rather, the grievance complains about the medical department's failure to re-issue Plaintiff low-bunk, shaving, and restricted-activity passes. Doc. #65, Ex. #3, p.1.   On June 5, 2002, some ten months after the July 2001 attack and surgery, Plaintiff submitted an informal grievance vaguely asserting that Dr. Briggs denied Plaintiff post-surgery medication and confined Plaintiff in a security cell in violation of departmental policy concerning inmates with seizures. Doc. # 65, Ex. #3, p.3.   This grievance was denied and returned to Plaintiff as "untimely." Id.   Plaintiff did not appeal the denial of his informal grievance to either the institutional level or to the Secretary of the DOC as required by Florida Admininstrative Code 33-103.005-.007.

None of Plaintiff's grievances complain that Wexford had a policy of treating inmates' medical needs with deliberate indifference.   A plaintiff who alleges widespread knowledge of the claim in the grievance due to a custom or policy must exhaust the available administrative remedies. Porter, 534 U.S. at 531-532.

Based upon the evidence submitted, it is clear that Plaintiff did not properly and fully exhaust his administrative remedies with

regard to any of the medical claims set forth in the Amended Complaint and consequently, the Court will grant Defendants Wexford and Briggs' Motion for Summary Judgment.

**B.  Defendant Churilla**

Based upon the evidence submitted, Plaintiff first filed an informal grievance addressed to Defendant Churilla ten months after the alleged incident that was not denied as untimely, but was addressed on the merits.   Doc. #65, Exhibit #3 at p. 2.   In particular, the response states that Defendant Churilla was contacted and denied the allegations. Id.  Plaintiff appealed the denial of his informal grievance to the warden, which was denied as untimely.  Id. at pp. 5-6.  Plaintiff then submitted a second appeal to the warden contesting the denial of his appeal as untimely, which again reaffirmed that the appeal was untimely and further advised Plaintiff that he could appeal the finding to the Secretary of DOC.  Id. at p. 7.  Plaintiff filed an appeal to the Secretary of the DOC, which was not denied as untimely.  Rather, the Secretary of the DOC evaluated the grievance and appears to have denied the grievance on the merits.   Id. at p. 10. Additionally, DOC conducted an extensive internal investigation of the incident as evidenced by the Inspector General's Report submitted by Defendant Churilla.   Thus, based upon a complete review of the entire record, the Court concludes that Plaintiff

exhausted his administrative remedies with respect to his Eighth Amendment claim against Defendant Churilla. Accordingly, the Court will now address the merits of Plaintiff's claim. <u>Boxer</u>, 437 F.3d 1107.

## IV.

The Supreme Court made clear that "prison officials have a duty . . . to protect prisoners from violence at the hands of other prisoners." <u>Farmer v. Brennan</u>, 511 U.S. 825, 833 (1994). Not every injury that an inmate suffers at the hands of another inmate "translates into a constitutional liability." <u>Id.</u> at 834. To show that a violation of an Eighth Amendment right occurred, a plaintiff must "' produce sufficient evidence of (1) a substantial risk of serious harm; (2) the defendant's deliberate indifference to that risk; and (3) causation.'" <u>Purcell ex rel. Estate of Morgan v. Toombs County, Ga.</u>, 400 F.3d 1313, 1319 (11th Cir. 2005) (citing <u>Hale v. Tallapoosa County</u>, 50 F.3d 1579, 1582 (11th Cir. 1995)). "Deliberate indifference is not the same thing as negligence or carelessness." <u>Maldonado v. Snead</u>, 168 Fed. Appx. 373 (11th Cir. 2006)(citing <u>Ray v. Foltz</u>, 370 F.3d 1079, 1083 (11th Cir. 2004)). "Merely negligent failure to protect" an inmate from an attack does not give rise to a § 1983 claim. <u>Carter</u>, 352 F.3d at 1350.

A plaintiff must demonstrate that the defendant was aware of specific facts from which an inference could be drawn that a

-13-

substantial risk of serious harm exists and that the prison official drew that inference. Purcell, 400 F.3d at 1319-20; Carter v. Galloway, 352 F.3d 1346, 1349 (11th Cir. 2003). In other words, to show that an official had subjective knowledge, the court is to inquire whether the defendant was aware of a "particularized threat or fear felt by [the plaintiff]." Carter, 352 F.3d at 1350. "An official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot . . . be condemned as the infliction of punishment" and does not give rise to a constitutional violation. Farmer, 511 at 838. Whether an official had requisite knowledge is a question of fact that may be demonstrated by circumstantial evidence. Id. at 842. Consequently, evidence of past attacks which were "long-standing, pervasive, well-documented, or expressly noted by [ ] officials in the past" may be sufficient to find that the official had actual knowledge. Id. However, general knowledge that a particular inmate is a problem inmate with a well-documented history of prison disobedience who is prone to violence is not sufficient. Carter, 352 F.3d at 1349. See also McBride v. Rivers, 170 Fed. Appx. 648 (11th Cir. 2006).

The Amended Complaint alleges that Defendant Churilla unlocked Plaintiff's cell door, allowed inmate Gonzalez into Plaintiff's cell, and watched inmate Gonzalez assault Plaintiff without

intervening to stop the assault. Defendant Churilla submits uncontroverted evidence that establishes: 1) Defendant Churilla unlocked the block of cell doors pursuant to DOC policy; 2) Defendant Churilla had no reason to suspect that Plaintiff was ever in any danger from inmate Gonzalez; 3) Defendant Churilla did not see inmate Gonzalez inside Plaintiff's cell; 4) Defendant Churilla did not know that inmate Gonzalez had attacked Plaintiff until he was told of the attack by an inmate; and 5) Defendant Churilla took immediate corrective action and contacted medical as soon as he learned of the attack on Plaintiff.

Contrary to allegations in the Amended Complaint, the evidence demonstrates that Defendant Churilla did not open Plaintiff's cell door to let inmate Gonzalez inside. Rather, the evidence demonstrates that after the inmates returned to their cells from their respective work assignments, all the cell doors, including Plaintiff's door, were simultaneously locked from the control room to prepare for a mandatory double-head count. Aff. Churilla, p. 2. The control room is located in the middle of x-shaped dormitory, between the first and second floors. Defendant Churilla can see Plaintiff's cell door, but from the control room cannot see inside the cell. Id., p. 3 and Exhibit "A" Diagram of G Dormitory at CCI. After the doors were locked, Officer Cardenas conducted the first head count while Defendant Churilla remained in

the control room.  Id. at 2.  When Cardenas returned to the control
room, Defendant Churilla left the control room and conducted the
second head count.  Id. at 2.  Defendant Churilla then returned to
the control room to open **all** of the cell doors, pursuant to DOC
procedure, so that the inmates could attend the noon-time meal.  Id.
at 3.  Contrary to  Plaintiff's claims, Defendant Churilla did not
open only Plaintiff's cell door, rather all of the doors in the
dorm were opened concurrently.  Aff. Churilla at 5.

Further, there is nothing in the record to establish that
Defendant Churilla knew or had any reason to know that there was
going to be an assault on Plaintiff on the day in question as
evidenced by the DOC Office of the Inspector General's Report,
Investigation #01-52012, which was submitted to the Inspector
General on August 27, 2001, approximately one month after the
alleged incident. Doc. #65, Exhibit #2 ("Report").  The Report
contains transcribed testimony based on tape recorded interviews
with two officers, nine inmate witnesses, the Plaintiff, and inmate
Gonzalez.  All the witnesses testified under oath.  All the
witnesses, including DOC Officer Saner, agreed that the incident
was precipitated by Plaintiff when he made an obscene hand gesture
toward inmate Gonzalez.  From a consensus of the inmates[2] the

---

[2]For privacy and security purposes, the inmates' actual names
that are contained in the Report are not referenced in this Order.

events leading up to the incident began when Gonzalez harassed Plaintiff about homosexual activity, and culminated in Plaintiff making an obscene hand gesture or comment to Gonzalez, which Gonzalez thought was disrespectful. Report, pp. 2-9.  Plaintiff's own testimony to the investigators makes clear that Plaintiff never told Defendant Churilla that Plaintiff had any fear of Gonzalez. Plaintiff never claims during the investigation that he ever feared Gonzalez, or even suggests that he believed he had a reason to fear Gonzalez, yet alone that he told Officer Churilla that he was in fear of Gonzalez.  In fact, Plaintiff told investigators that the assault occurred because inmate Gonzalez wanted Plaintiff's "watch, necklace, and jewelry." Id. at 7.  Thus, the record establishes that at no time did Defendant Churilla have reason to know of a potential attack on Plaintiff by inmate Gonzalez.

Finally it is clear that Defendant Churilla did not learn that Plaintiff had been assaulted by Gonzalez until approximately 12:45 p.m., when an inmate approached the Control Room and informed Defendant Churilla that Plaintiff had been injured.  Aff. Churilla at p. 3, Report, at pp 4-5.  As stated earlier, from Defendant Churilla's point of view in the Control Room, he could only see Plaintiff's cell door, not inside Plaintiff's cell. Aff. Churilla at 3-4.  This is consistent with Plaintiff's admission to investigators that no officers were present during the attack.

Plaintiff admits that while the attack was occurring he heard another inmate yelling to Gonzalez "'the police are not seeing you, the police are not seeing you'" which Churilla explained to the investigator that he understood the comments to mean that "the correctional officers had not noticed what was going on." Report, at pp. 5, 7, 18-19. Further, none of the nine inmates who witnessed the incident state, or even suggest, that Defendant Churilla was present during the assault. Indeed, one inmate told investigators that "'officer no see nothing until the inmate over there let him know. Officer no see nothing. No Sergeant, no Officer, nobody see nothing.'" Report, at p. 69. As soon as Defendant Churilla was informed that Plaintiff was injured, the record establishes that Churilla contacted the medical department at 12:47 p.m., within two minutes of being told of the attack, and medical staff arrived fifteen minutes later with a wheelchair to take Plaintiff to the medical department. Aff. Churilla at p. 5, Exhibit C, Incident Report.

The Court finds there are no genuine issue of material facts. Further the Court finds that the record clearly establishes no factual basis to conclude that Defendant Churilla violated Plaintiff's Eighth Amendment rights. Consequently, the Court will grant Defendant Churilla's Motion for Summary Judgment. Any other claim not addressed herein is deemed to be without merit.

ACCORDINGLY, it is hereby

**ORDERED:**

1. Wexford Health Services, Inc. and Dr. Briggs' Motion for Summary Judgment (Doc. #66) is **GRANTED.**

2. Defendant Churilla's Motion for Summary Judgment (Doc. #65) is **GRANTED.**

3. The **Clerk of Court** shall: (1) enter judgment granting Summary Judgment in favor of Defendants Wexford Health, Dr. Briggs, and Churilla; (2) enter judgment dismissing the remaining Defendants pursuant to the March 27, 2006 Opinion and Order (Doc. #44); (3) terminate any pending motions as moot (Docs. #70, #71); (4) close this case.

**DONE AND ORDERED** in Fort Myers, Florida, on this __25th__ day of September, 2006.


_____
JOHN E. STEELE
United States District Judge

SA:  alj/hmk
Copies: All Parties of Record

-19-